# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **ALEXANDER STROSS,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:20-cv-01071-RP** |
| | § | |
| **REALTY AUSTIN, LLC and** | § | |
| **JONATHAN M. BOATWRIGHT,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE ROBERT PITMAN
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion to Dismiss, filed January 29, 2021 (Dkt. 26); Plaintiff's Response to Defendants' Second Motion to Dismiss, filed February 12, 2021 (Dkt. 28); and Defendants' Reply, filed February 19, 2021 (Dkt. 29). On April 27, 2021, the District Court referred the Motion to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I. Background

Plaintiff Alexander Stross is a photographer and real estate broker who licenses his photographs to real estate agents for marketing use. First Amended Complaint, Dkt. 24 ¶ 9. Stross licensed thousands of photographs to the Austin/Central Texas Realty Information Service ("ACTRIS"), an Austin-area multiple listing service ("MLS"). *Id.* ¶ 10. MLS sites like ACTRIS compile active real estate listings into a database that is sublicensed for use by Realtors and brokers who share active listings on their websites. *Id.*

1

To download and display Austin-area listings, ACTRIS requires realtors and brokers to execute a Participant Content Access Agreement (the "Agreement" or "PCAA"), which functions as a sublicense of its MLS data. *Id.* ¶ 11. Under the Agreement, sublicensees are authorized to use MLS data via two methods: Internet Data Exchange displays and Virtual Office Websites. *Id.* ¶ 13. The Internet Data Exchange, or IDX, display is an MLS data feed. *Id.* ¶ 14. Because its primary purpose is lead generation, it is limited to active listings. *Id.* ACTRIS prohibits displaying off-market listings or modifying listing content through IDX. *Id.* A Virtual Office Website, or VOW, is a realtor's Internet website where the consumer has the opportunity to search the MLS database. Dkt. 26 at 14. Virtual Office Websites thus support existing clients of brokerage services. *Id.* ¶ 15. ACTRIS rules state that certain sold data on VOW may be displayed only "to support an estimate of value on a particular property for a particular client." *Id.* Sublicensees agree to abide by the ACTRIS rules limiting the purposes for which the MLS data may be used. *Id.* ¶¶ 11-16. The rules also state that any violation exposes users to claims for copyright infringement by the copyright owner. *Id.* ¶ 11.

Defendant Realty Austin, LLC is a real estate brokerage company in Austin owned and operated by Defendant Jonathan M. Boatwright. *Id.* ¶ 17. Defendants executed ACTRIS's Agreement and gained access to the MLS database containing Stross's licensed photographs. *Id.* ¶ 12. Defendants' website, realtyaustin.com, has more than 1.4 million withdrawn, expired, and sold listings from Austin MLS. *Id.* ¶ 19. Stross alleges that he found 2,330 of his photos posted on Defendants' website in violation of ACTRIS's rules and sublicense. *Id.* ¶ 21. Stross brings claims for direct, contributory, and vicarious copyright infringement. Dkt. 24 ¶¶ 23-40.

Defendants moved to dismiss Stross's Complaint for failure to state a claim on January 5, 2021. Dkt. 19. Stross then filed his First Amended Complaint, which rendered Defendants' motion moot.

Dkt. 24. In their second motion, Defendants seek dismissal of Stross's First Amended Complaint for failure to state a claim.[1]

## II.    Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

---

[1] Defendants request an oral hearing on their motion. Pursuant to Local Rule CV-7(h), because the Court finds this matter suitable for disposition without a hearing, Defendants' request is **DENIED**.

## III.    Analysis

There are two types of copyright infringement: direct and secondary. *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir. 2017). Direct copyright infringement occurs when a party engages in infringing conduct. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) (stating that anyone who violates exclusive rights of a copyright owner is an infringer). Secondary liability is a means of holding parties responsible for infringement by others even if they have not engaged in the infringing activity. *Id.* at 435. Secondary infringement occurs when one intentionally induces or encourages infringing acts by others or profits from such acts while declining to exercise a right to stop or limit them. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). A plaintiff is entitled to plead alternative claims for direct and contributory copyright infringement against a single defendant even if the theories are inconsistent or based on inconsistent allegations of fact. *Oppenheimer v. Deiss*, No. A-19-CV-423-LY, 2019 WL 6525188, at *3 (W.D. Tex. Dec. 3, 2019) (citing FED. R. CIV. P. 8(d)(3)), *R. & R. adopted*, 2020 WL 10056214 (W.D. Tex. Jan. 15, 2020).

### A.  Direct Copyright Infringement

Defendants argue that Stross's claim for direct infringement fails because he has not alleged that they acted volitionally. Defendants contend that they do not select content to use and display because their website is an automated system that retrieves data from ACTRIS. Stross responds that he has alleged facts showing the Defendants copied, displayed, distributed, and used his photographs without his permission.

To state a claim for direct copyright infringement, a plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of a work that are original. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). Direct copyright infringement requires

4

volitional conduct, which is "conduct by a person who causes in some meaningful way an infringement." *BWP Media,* 852 F.3d at 440 n.1 (citation omitted).

Stross has alleged facts sufficient to state a claim for direct copyright infringement, as follows:

- He is the owner of 2,300 federally registered copyrights for his photographs. Dkt. 24 ¶ 10; Dkts. 24-1, 24-2.

- Defendants (1) copied his photographs, (2) displayed the copies on their website, (3) distributed the copies through their website, and (4) used the copies to create unauthorized derivative works. Dkt. 24 ¶¶ 21, 24-25.

- Defendants acted volitionally by maintaining their website containing his photographs in knowing violation of the ACTRIS sublicense; controlling the display of his photographs via IDX and VOW, and using software to create and display unauthorized derivative works; and copying and uploading his photos to Amazon's storage servers for display and distribution. *Id.* ¶ 26.

Defendants contend that Stross cannot show volitional conduct because they do not control the selection of content on their website. Dkt. 26 at 11-12. The inquiry on a Rule 12(b)(6) motion to dismiss, however, is whether plaintiff has pleaded, not proven, the necessary elements of a copyright infringement claim. *Stross v. PR Advisors, LLC,* No. 3:19-CV-1086-G, 2019 WL 5697225, at * 2 (N.D. Tex. Oct. 31, 2019).[2] Stross's factual allegations support each element of direct infringement and, if true, show volitional conduct by Defendants. The Court finds that Stross has alleged sufficient facts to state a plausible claim of direct copyright infringement.

## B. Contributory Copyright Infringement

Contributory infringement is "intentionally inducing or encouraging direct infringement." *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 798 (5th Cir. 2017) (quoting *Grokster*, 545 U.S. at 930). To establish a claim for contributory copyright infringement, a copyright owner must show that the defendant, with knowledge of the infringing activity,

---

[2] For the same reason, *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019), cited by Defendants, is not persuasive; that case concerned proof at trial and summary judgment, not whether the plaintiff stated a claim for relief.

induced, caused, or materially contributed to the infringing conduct of another. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999).

Stross asserts separate claims for contributory copyright infringement against Realty Austin and Boatwright. In support of his contributory copyright claim against Realty Austin, Stross alleges that:

> Realty Austin has knowingly induced, caused and/or materially contributed to the infringing conduct of third parties by, *inter alia*, employing "share," "copy link" and "favorite" buttons on its website that induced and enabled users (including Plaintiff's investigator) to copy, distribute and display Plaintiff's Photos via social media, text, email, and Realty Austin's social platform "Collections."

Dkt. 24 ¶ 30. Stross alleges that Realty Austin was aware of the infringing activity because the buttons were designed "for the specific purpose of inducing users to engage in 'viral marketing,' which is achieved when content is shared across the Internet, and in particular—through social media." *Id.* Stross's allegation comports with the Supreme Court's characterization of inducement in *Grokster*, 545 U.S. at 918: "The classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations." Stross further alleges that such marketing activities violate ACTRIS rules that require sublicensees to maintain control over MLS content. Dkt. 24 ¶ 30.

In support of his contributory copyright claim against Boatwright, Stross alleges that Boatwright knowingly contributed to the infringing conduct of Realty Austin and its users. *Id.* ¶ 31. Specifically, Stross alleges that Boatwright (1) personally directed Realty Austin's unauthorized use of MLS photographs; (2) developed or supervised the development of the features on Realty Austin's website that facilitated the infringement; (3) developed or supervised the development of computer code and website buttons that caused the copying and distribution of Stross's photos; and (4) supervised the removal and restoration of Stross's photos on Realty

6

Austin's website after notification of infringement. *Id.* Taken as true, these allegations are sufficient to show that Boatwright knew that Realty Austin and its users were committing direct infringement, and that he actively induced, caused, or materially contributed to their actions. *See UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 765 (W.D. Tex. 2019) (stating that defendant provided service permitting customers' direct infringement therefore potentially was liable as secondary infringer).

The Court finds that Stross has alleged sufficient facts to state a plausible claim of contributory copyright infringement against both Defendants, which is all that is required at the motion to dismiss stage. *See Oppenheimer*, 2019 WL 6525188, at *3 (denying motion to dismiss contributory copyright infringement claim because allegations created reasonable inference that Defendants knew of infringing activity and induced, caused, or materially contributed to direct infringement).

## C. Vicarious Copyright Infringement

To state a claim for vicarious infringement, a plaintiff must show that a defendant has (1) a direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declines to stop or limit it. *Grokster*, 545 U.S. at 930. Intent or knowledge of the infringement is not an element of a claim for vicarious liability. *Id.* at n.9; *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC,* No. A-17-CA-365-LY, 2018 WL 1096871, at *9 (W.D. Tex. Feb. 28, 2018), *R. & R. adopted,* 2018 WL 2182282 (W.D. Tex. Mar. 26, 2018).

In support of the first element of his vicarious copyright infringement claim, Stross alleges that Realty Austin "had a direct financial interest in the infringing activities of its users because they were unwittingly participating in Realty Austin's 'viral marketing' campaign by 'sharing' content that drove sales leads to the Realty Austin website." Dkt. 24 ¶ 36. Stross also alleges that Realty

Austin had a direct financial interest in "the saved costs of licensing fees it would otherwise have paid to use the works in 'viral marketing.'" *Id.* Regarding Boatwright, Stross alleges that he had a direct financial interest in Realty Austin and its users' infringing activities "by virtue of the heightened web traffic and leads that were generated through those activities, and his ownership interests in Realty Austin (which allowed him to reap direct financial reward from the increased draw and leads generated)." *Id.* ¶ 38.

In support of the second element of his vicarious copyright infringement claim against Defendants, Stross alleges that Realty Austin "had both the right and ability to supervise the infringing conduct of its users, and the practical ability to stop such conduct, by disabling the 'share,' 'copy link' and 'favorite' buttons and/or by terminating users' accounts." *Id.* ¶ 35. Regarding Boatwright, Stross alleges that as "co-founder, co-owner, President and Chief Technology Officer of Realty Austin," Boatwright had the right and ability to supervise and stop the infringing activities of Realty Austin by "(i) disabling the various technologies at issue, and (ii) making the business decision for Realty Austin to comply with its narrow PCAA license instead of violating it." *Id.* ¶ 37.

The Court finds that Stross has alleged sufficient facts to support a plausible claim of vicarious copyright infringement at the motion to dismiss stage. *See Stross,* 2019 WL 5697225, at *2 (holding that plaintiff alleged sufficient facts at Rule 12(b)(6) stage to support vicarious infringement claim where plaintiff alleged defendant had a direct financial interest in use of infringing photo on website and supervision over website); *Suncoast Post-Tension, Ltd. v. Scoppa*, No. 4:13-cv-3125, 2014 WL 12596472, at *5 (S.D. Tex. July 17, 2014) (finding that plaintiff alleged sufficient facts to support vicarious infringement claim against corporate officer who benefited from and directed infringement).

## IV.    Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Defendants' Motion to Dismiss (Dkt. 26).

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 13, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE